UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RESIN SYSTEMS, INC.** | : | **DOCKET NO. 2:06 CV 958** |
| **VERSUS** | : | **JUDGE TRIMBLE** |
| **PACIFIC INSURANCE COMPANY** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Presently before the court is Defendant's motion for summary judgment. (Doc. 22). Defendant claims that it has paid all benefits owed under it policy, that there are no material issues of fact, and that it is entitled to a summary judgment dismissing Plaintiff's claims.

The Supreme Court has stated that Fed.R.Civ.P. 56(c) mandates summary judgment in any case where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof. *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In the summary-judgment context, the rules governing burden of proof are critically important. The moving party bears the burden of establishing that there are no genuine issues of material fact. (footnote omitted) To satisfy this burden, the moving party may either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. (footnote omitted) Once the moving party makes that showing, however, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. (footnote omitted) The nonmoving party cannot discharge that burden by referring to the "mere allegations or denials" of the nonmoving party's pleadings; rather, that party must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already

in the record, set out specific facts showing that a genuine issue exists. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990).

The principal contest in this matter centers on the application of a co-insurance clause in Defendant's policy relative to business income coverage. It appears that the policy provided business income coverage with limits of $200,000 (plus $48,000 for loss of rents). The supplemental declarations page indicates that the "coinsurance" for this coverage was "100% Actual Loss Sustained." Under part E. Additional Condition the policy provides:

> We will not pay the full amount of any loss if the Limit of Insurance for Business Income is less than:
> a. The Coinsurance percentage shown for Business Income in the Declarations; times
> b. The sum of:
>     (1) The Net Income (Net Profit or Loss before income taxes), and
>     (2) Operating expenses, including payroll expenses.
> That would have been earned or incurred (had no loss occurred) by your "operation" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Apparently for the purposes of the motion now being considered the parties do not dispute that the sum of the Net Income and Operating expenses within the meaning of the above quoted policy provision is $3,583,744. Thus, Defendant argues that under the policy the amount owed under the policy for loss of business income is determined by first dividing the $248,000 total limits by the $3,583,774, and then multiplying the resulting fraction (6.92%) by the actual loss. The parties apparently also agree, at least for present purposes, that the actual loss was $76,550 so the benefits payable, after application of the coinsurance provisions, totaled $5,297, and this amount has been paid.

In response Plaintiff directs the court's attention to LSA-R.S. 22:694 which provides:

> No policy of fire, lightning or windstorm insurance covering property or risks in this state shall contain any clause or provisions requiring the insured to take out or maintain a larger amount of insurance than that covered by such policy or providing in any way that the insured shall be liable as a co-insurer with the insured unless such clause has been approved by the fire insurance division and there has been a consideration allowed in the rate of premium charged for such policy.

Defendant apparently concedes that, if applicable, this statute precludes a summary judgment relative to the business income coverage. However, it argues that it is a surplus lines carrier so that this statute has no application to the policy at issue here. In essence Defendant argues that the provisions providing for the issuance of surplus lines insurance by unauthorized insurers is found in Part XXVII of the insurance code and for this reason provisions of other parts of the insurance code, including R.S. 22:694, have no application to it. The court finds this argument unpersuasive. The provisions of Part XXVII dealing with surplus lines policies focus on the solvency of the insurer. It is clear that special attention should be given to the solvency of these insurers in view of the fact that the policyholder and claimant are not covered by the Louisiana Insurance Guaranty Association in the event of insolvency. See. R.S. 22:1258. It does not logically follow that because of this special regulation that these insurers would be free of any regulation regarding the terms in their policies. There is no provision which specifically exempts such policies from other provisions of the insurance code. In fact, R.S. 22:1259 provides that surplus line insurance is valid and enforceable "to the same effect as like contracts issued by authorized insurers."

Most significantly, the Louisiana Supreme Court has clearly held that other provisions of the insurance code apply to surplus line insurance. In *Veal v. Interstate Fire and Casualty*

3

*Company*, 325 So.2d 795 (La. 1975) the court held that the statute, LSA-R.S. 22:1406(D)(1)[1], providing for mandatory uninsured-motorist coverage in all automobile liability policies issued for delivery in Louisiana applied to surplus line policies.  In doing so the court stated:

> We . . . rest our holding . . . upon the broad and unambiguous language of Section 1406(D).  It expressly provides that all policies issued for delivery in Louisiana must afford uninsured-motorist coverage (unless such is waived).  We can find no intent to exempt from this requirement policies issued through Louisiana-licensed brokers for coverage of Louisiana-based automobiles and Louisiana policyholders.

*Id*. at 798. [2]

The reasoning of the court is equally applicable here.  R.S. 22:694 by it clear and unambiguous terms applies to every "policy of fire, lightning or windstorm insurance covering property or risks in this state."  As the court in *Veal*, this court can find no intent to exempt surplus line insurance from the requirements of this statute. *Compare Enterprise Leasing Co. of New Orleans v. Simmons*, 664 So.2d 1297 (La.App. 4 Cir. 1995) (Refusing to apply statute to surplus line policy where statute "specifically states that it applies to insurance companies authorized to write insurance.").

Defendant relies primarily, if not exclusively, on *Edwards v. Daugherty*, 883 So.2d 932 (La. 2004) to support its argument.  That reliance is unfounded.  *Edwards* dealt with a "defense within limits" (DWL) policy where the available indemnity limits were consumed by the costs of defense.  After noting that some states had enacted laws limited or prohibiting such policies the court stated:

---

[1] Now LSA-R.S. 22:690(1)(a).

[2] In *Howell v. Balboa Insurance Company*, 564 So.2d 298 (La. 1990), the court reaffirmed its holding in *Veal* concluding that LSA-R.S. 22:1406(D) applied to all policies , including a surplus line policy.

> Our review of the statutory provision concerning surplus lines insurance leads us to conclude that Louisiana has no statutory restrictions concerning DWL policies. There is no statutory provision that expressly grants or limits Sphere Drake's right to project all costs onto its insureds. In fact, the Louisiana Insurance Code provides little regulation of surplus lines insurance. . . . More importantly to this case, there are no regulations at all regarding "defense costs" provisions in surplus lines policies.

*Id*. at 943.

This decision does not undermine the court's ruling in *Veal*. Significantly, the court in *Edwards* pointed to no Louisiana statute that regulated the use of DWL policies at all. Accordingly, it did not address the issue of whether provisions of the insurance code such as R.S. 22:694 were applicable to surplus line policies. At best the language regarding the regulation of surplus lines insurance is the weakest of dicta. Moreover, the court did conclude that the provisions of the surplus line policy which allowed legal interest to be deducted from policy limits were unenforceable because they conflicted with LSA-R.S. 13:4203. This court can discern no rational basis that would be consistent with this result and at the same time would lead to the conclusion that R.S. 22:694, a statute that on its face applies to all "windstorm insurance covering property or risks in this state," has no application to surplus line policies. This court concludes that R.S. 22:694 applies to the policy at issue here. Accordingly, the motion for summary judgment relative to the business income coverage is denied.[3]

The property coverage under the Defendant's policy provides for a 3% deductible on the insured value of each building. Plaintiff has not seriously contested the application of this

---

[3] Defendant has also argued that it would violate the U.S. Constitution if Louisiana imposed regulations, other than those found in Part XXVII, on unauthorized insurers that issue policies for delivery in Louisiana to Louisiana insureds covering Louisiana property. The only authority cited in support of this argument is the lone dissent in *Veal*. This argument is unpersuasive.

5

deductible in this case, and there does not appear to be any genuine issue of fact material to the application of the deductible. Accordingly, pursuant to F.R.C.P. 56(d) this court concludes that the application of the deductible to the property coverage was proper and in accordance with the law and the policy provisions. Otherwise, the motion for summary judgment is denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 25th day of April, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE